David B. Lally, Esq., (SBN 145872)
Law Offices of David B. Lally
PO Box 355
Wilmington, NY 12997-0355
Telephone: (949) 500-7409
Email: davidlallylaw@gmail.com

*Attorneys for Plaintiff and Defendant, Chapter 7 Debtor Jonathan Stein*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION

|  |  |
|---|---|
| In re:<br><br>JONATHAN ALAN STEIN,<br><br>    Debtor.<br>_____ | ) **Adversary Case No.:** _____<br>)<br>) Chapter 7 Case No.: 9:23-bk-10174-RC<br>)<br>) |
| Jonathan Alan Stein,<br>    Plaintiff<br>vs.<br><br>ARMEN MANASSERIAN, PAUL YOUNG,<br>CHORA, YOUNG & MANASSERIAN LLP,<br>SANDONNE GOAD, GABRIELINO-<br>TONGVA TRIBE, AN UNINCORPORATED<br>ASSOCIATION WITH NO LEGAL<br>CAPACITY, AND DOES 1-10,<br>    Defendants<br>_____ | ) INITIAL COMPLAINT BY DEBTOR<br>) JONATHAN STEIN AND DEMAND<br>) FOR JURY TRIAL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

TO THE HONORABLE RONALD A. CLIFFORD III, UNITED STATES BANKRUPTCY

JUDGE, AND DEFENDANTS:

Chapter 7 Debtor Jonathan Stein (the "Debtor") complains against Defendant Gabrielino-

Tongva Tribe, an unincorporated association that is no longer in good standing and without an agent

for service of process (the "Judgment Creditor"), and other Defendants, as follows. The allegations are

made based on information and belief unless otherwise noted.

## JURISDICTION AND VENUE

1.       This is an adversary Complaint for debt collection abuses and other causes of action

under federal and state law.  To comply with Federal Rules of Bankruptcy Procedure Rule 7008 and

Local Bankruptcy Rule 7008-1, this Adversary Complaint relates to the Chapter 7 case in this district

entitled *In re Jonathan Stein*, Case 9:23-bk-10174. Plaintiff consents to entry of final orders or

judgment by the Bankruptcy Court.

2.       This Court has jurisdiction under Bankruptcy Rule 7001 as well as 28 U.S.C. §§ 1331.

Supplemental jurisdiction for state-law claims is based upon 28 U.S.C. § 1367. Venue is proper in this

Judicial District pursuant to 28 U.S.C. §§ 1391.

## PRELIMINARY STATEMENT

3.       In Case 9:23-bk-10174, Judgment Creditors and its attorneys of record violated the

automatic stay twice and filed a plainly false Proof of Claim.  In other legal actions -- many

unsuccessful -- Defendants acted outside of their litigation privilege to engage in malicious

prosecution; abuse of process; and accuse Stein of criminal conduct falsely in order to gain advantage

in the civil litigations.  Likewise, Defendants repeatedly sought criminal prosecutions against Stein,

including one action requesting that Stein been thrown in jail for 26 days.  Defendants attempted to sell

the shares of Stein's professional law corporation to a non-lawyer, in direct contravention of

California's attorney fraud laws.  They acted intentionally to strip Stein of his chosen counsel.

4.       Judgment Creditor and its attorneys of record have engaged in a large number of debt

collection abuses and other tortious conduct, including a physical assault of Stein; consciously seeking

and causing Stein to have a heart incident that sent him by ambulance to the hospital, after ignoring two warning letters from Stein's cardiologist; filing a forged document in Santa Barbara Superior Court legal proceedings; perhaps filing a second forged document in the same litigation; repeatedly levying on the Law Offices of Jonathan Stein **"ERISA Plan,"** in contravention of federal anti-alienation provisions that specifically protect the ERISA Plan from a judgment creditor's levies; and hounding Stein into a bankruptcy filing after seven lawsuits destroyed his financial well-being. During this same time, Stein was actually cooperating with legitimate debt collection activities and paid over $46,000 towards the **"August 2019 Judgment."**

5.      Finally, Judgment Creditor has no legal capacity to defend this adversary action, or any other court action, because it is not in good standing, and has no agent for service of process. This has been the case since 2019. Judgment Creditor is not a federally recognized Indian tribe and is not a state recognized Indian tribe. Judgment Creditor has never made <u>any</u> filings with the California Secretary of State or County of Riverside; has never had <u>any</u> agent for service of process; and has no business activities, all because it failed to pay taxes on $2.15 million in income. As a result of the absence of legal capacity since 2019, Judgment Creditor's attorneys of record since 2020 have engaged in champerty, maintenance and barrenty, in violation of *Cal.B&P Code §6129*. Not surprisingly, the same attorneys refused to forward settlement offers to their purported client, despite a State Bar complaint to that effect.

## **PARTIES**

6.      Plaintiff JONATHAN STEIN is the Debtor in Chapter 7 Case 9:21-bk-10174, as well as this adversary action.

7.      Defendant ARMEN MANASSERIAN is and has been attorney of record since early 2020 for Defendant Judgment Creditor in all of the litigations mentioned. He holds California State Bar Number 288199 and is an owner of Defendant Chora, Young & Manasserian, LLP (the "Chora Law Firm"). Defendant Manasserian is a resident of and works regularly in this judicial district.

8.      Defendant PAUL YOUNG is and has been attorney of record since early 2020 for Defendant Judgment Creditor in all of the litigations mentioned. He holds California State Bar

Number 257571 and is an owner of Defendant Chora, Young & Manasserian, LLP. Defendant Young is a resident of and works regularly in this judicial district. Defendant Young has had at least half a dozen federal tax liens filed against him.

9. Defendant CHORA YOUNG & MANASSERIAN LLP, the Chora Law Firm, claims to be a California limited liability partnership. However, there is no record at the California Secretary of State of any such entity and the Chora Law Firm has no agent for service of process. The Chora Law Firm is and has been attorney of record since early 2020 for Defendant Judgment Creditor in all of the litigations mentioned below. Its headquarters is in this judicial district and it works regularly in it.

10. Defendant SANDONNE GOAD is an individual that resides in Riverside County, California. She was formerly the head of Judgment Creditor, before it lost its legal capacity in 2019. On information and belief, Goad shares in the financial remuneration of the Chora Law Firm or is paid by it. Defendant Goad is a resident of and works regularly in this judicial district.

11. Defendant GABRIELINO-TONGVA TRIBE (the "Judgment Creditor") is not a state recognized Indian Tribe, nor a federally recognized Indian Tribe, despite its misleading name. It claims to be an unincorporated association headquartered in Riverside County, but it is not a California unincorporated association in good standing. It is a suspended legal entity that has lost its legal capacity since at least 2019. Judgment Creditor has no agent for service of process and no registration with the California Secretary of State or the County of Riverside. It has no business operations or website.

12. Defendants DOES 1-10 are unknown individuals who are officers, agents or alter egos of Judgment Creditor or Defendant Goad, or both. Each Doe Defendant is a resident of this judicial district; or has regularly transacted business in this judicial district during the time period covered by this Complaint and so is subject to the jurisdiction of this Court. The identities and roles played by Doe Defendants 1-10 are not currently known. Plaintiff will amend this Complaint to include the name or names of said persons or entities when that information becomes readily available.

13. Plaintiff is informed and believes each Defendant was the agent or alter ego of the other Defendants at all relevant times alleged herein; and committed the acts or omissions described below

with each of the other Defendant's actual and apparent authorization, approval, ratification or direction.

# **FACTUAL ALLEGATIONS**

## A. *Factual Allegations Demonstrating That Defendants Violated The Automatic Stay Twice, And Debtor's Damages Continue To Accrue.*

14.     The Chapter 7 automatic stay was violated <u>twice</u> by Judgment Creditor and its attorneys.

15.     On March 16, 2023, Trial Court Case BC361307 issued a Minute Order, based on Debtor's commencement of his Chapter 7 bankruptcy case, staying a pending Application to declare the Debtor as a vexatious litigant (the "March 16 Minute Order" staying the "Vex Lit Motion"). The March 16, 2023 Minute Order recognized this Court's automatic stay dated March 10, 2023.

16.     On or about March 21, 2023, Judgment Creditor and its attorneys filed in Trial Court Case BC361307 its request for rulings on the Vex Lit Motion, despite the automatic stay. Judgment Creditor and its attorneys did not seek relief from the stay before filing its Superior Court Motion, nor did it inform <u>this</u> Court of its request in the Superior Court. Instead of filing a motion in <u>this</u> Court to lift the automatic stay, it filed its quasi-Motion to lift the automatic stay in Trial Court Case BC361307. This constitutes an intentional and knowing stay violation.

17.     On April 10, 2023, Trial Court Case BC361307 ruled on the Judgment Creditor's motion and issued a minute order lifting the automatic stay (the "April 10 Minute Order"). The April 10 Minute Order was not brought to the attention of this Court. Thereafter, the Trial Court granted the Vex Lit Motion and declared Stein a vexatious litigant. Plaintiff maintains the April 10 Minute Order is void abnitio as a stay violation, and has no force or effect whatsoever.

18.     During oral argument at this Court's hearing on a matter in Case 9:23-bk-10174 on May 2, 2023, this Court noted that there was a possible violation of the automatic stay because of Defendants' conduct outlined above (although the Court specifically chose not to make any such ruling because it was not before the Court). Defendants Chora Law Firm, Manasserian and Young were present for the Court's comments.

19.    Despite the Court's comments, Judgment Creditor and its attorneys then violated the automatic stay a <u>second</u> time. Judgment Creditor and its attorneys filed a pre-filing order with Trial Court Case BC361307. The Trial Court then stamped and issued the pre-filing order (the "Pre-filing Order"). The April 10 Minute Order and the Pre-filing Order are now on appeal. And the Pre-Filing Order is likewise void and of no force and effect because it is another blatant and intentional violation of the automatic stay in Plaintiff's pending Chapter 7 case.

20.    These two violations of the automatic stay have caused Stein actual damages, losses, costs and injury, which continue to increase. Already, Stein has been forced to file a Notice of Appeal and other appellate papers, to incur stiff appellate court fees, attorney's fees, and to suffer other actual damages, losses, costs and injury. Stein will be forced to file a Section 362(k) motion in this Court as well, and other motions as necessary for a ruling that the April 10 Minute Order is void.

21.    While Judgment Creditor and its attorneys actively <u>concealed</u> their actions from this Court, they <u>bragged</u> about them to other courts. In particular, Judgment Creditor and its attorneys included the Vex Lit Motion and the April 10 Minute Order in their Status Report to the United States District Court for Southern District of Iowa, in Case 4:16-cv-0331 (the "Iowa Federal Court Case"). Their bragging was meant to gain advantage in the Iowa Federal Court case. Thus, punitive damages are warranted for repeated, knowing and a purposeful violations of the stat that willfully disregarded the Debtor's rights.

### B. Factual Allegations Demonstrating That Defendants Filed A Plainly False Proof of Claim.

22.    According to the Proof of Claim filed by Judgment Creditor and its attorneys [Claims Docket 1-1], the secured claim of the Judgment Creditor amounts to $5,592,000. That is plainly false. The August 2019, Judgment is not a secured claim. However, debt collection activities succeeded in creating three different security interests, which at most total to less than $100,000. Other than these three debt collection liens, Judgment Creditor is an unsecured creditor. Therefore, the $5.6 million secured claim is false on its face.

23.    The Debtor owns 1% of the Murrell Property as a tenant-in-common with unsecured creditor Hong Sun, who owns 99%. The Murrell grant deed states, "Jonathan A. Stein, a married man

as his sole and separate property as to an undivided 1 % interest and Linda Hong Sun Stein, a married

woman as her sole and separate property as to an undivided 99% interest as tenants in common."

Debtor's Schedule A/B lists the value of the 1% interest at $19,000 [Dkt 13, at p.3]. Judgment

Creditor's lien on Debtor's 1% interest can be only $19,000 -- an amount which would be covered by

Debtor's homestead exemption -- and so the lien is valueless.

24.     Second, the Debtor owns 1% of the Kirk Property. The grant deed states, "Jonathan A.

Stein, a married man as his sole and separate property, as to an undivided 1% interest and Linda Hong

Sun Stein, a married woman as her sole and separate property, as to an undivided 99% interest, as

tenants in common". The Debtor's Schedule A/B lists the value of the Debtor's 1% interest in the Kirk

Property at $13,000 [Dkt 13, at p.4]. A Notice of Lis Pendens was filed against the Debtor's 1% co-

tenancy interest in the Kirk Property. Therefore, Judgment Creditor's lien on the Debtor's 1% interest

can be only $13,000.

25.     Third, the Judgment Creditor holds an ORAP lien against the Debtor's non-exempt

personal property, which on-exempt personal property is listed in the Debtor's Schedules A/B and C

[Dkt 13 at pp.3-11] and amounts to less than $25,000. Judgment Creditor's lien on the Debtor's

personal property can be only less than $25,000.

26.     As a result of Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

### C. Factual Allegations Demonstrating That Defendants Filed One And Perhaps Two Forged Documents In The Santa Barbara UVTA Action.

27.     In Santa Barbara Superior Court Case 21CV0198 (the "Santa Barbara UVTA Action"),

on June 14, 2021, Judgment Creditor and its attorneys filed the *First Amended Complaint* with its

Exhibit "O". Exhibit O purported to be a Statement of Information filed with the California Secretary

of State by the Debtor. Debtor never filed any such document, nor are there any computerized records

of the Secretary of State that any such filing by the Debtor exists. The *First Amended Complaint* points

to the forged 2019 Statement of Information as evidence that Stein is in fact the owner of Milpas LLC,

when the Debtor has never owned any membership interests in Milpas LLC.

28.     The Debtor never authored nor filed any such Statement of Information. The Debtor

hired an expert document examiner, who rendered an expert report in the Santa Barbara UVTA Action

that opined that the 2019 Statement Of Information was inauthentic. The Chora Law Firm took a day-long expert deposition of expert Wakshull. At least 30 times, Defendant Young demanded that expert Wakshull retract his expert opinion and made explicit threats to sue expert Wakshull if he did not do so (there are of course no lawful grounds for any such lawsuit). Each time expert Wakshull refused to withdraw his expert opinion and confirmed it instead.

29.    A second suspected forgery was used by Judgment Creditor and its attorneys as an exhibit in Stein's most recent Debtor's exam (they refused to allow a transcript to be reviewed by Stein, the deponent). The second suspected forgery was a purported loan application made by the Debtor in connection with the Murrell Property, which implied that Stein was the owner of Milpas LLC. The suspected forgery had no Bates stamp. A different version of the same loan application did have a Bates stamp and did not imply that Stein owned Milpas LLC. The suspected forgery also was dated after the Murrell Property loan was fully funded. In other words, the forged loan application was allegedly made to first apply for a loan, but it was dated after the loan had been applied for, approved, and fully funded by the bank.

30.    As a result of Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

### D. Factual Allegations Demonstrating That Judgment Creditor Has No Legal Capacity.

31.    According to the August 2019 Judgment and the August 2019 Statement of Decision, Judgment Creditor is a "Native American Tribe recognized in California and governed by a Tribal Council." *August 2019 Judgment ¶1(a); August 2019 Statement of Decision ¶7.* According to the numerous filings made with this Court and other courts, Judgment Creditor is not a state recognized Native American Tribe, and California has no state-recognized Indian Tribes at all. Instead, Judgment Creditor uses the name "Gabrielino-Tongva Tribe" as if it is an Indian tribe, but admits it is only an unincorporated association.

32.    Judgment Creditor is not an unincorporated association in good standing. Judgment Creditor has never paid any entity fees or other taxes to the California Franchise Tax Board for approximately 20 years. It earned $2.15 million in income in 2006, but never paid any taxes on that amount, and as a result, it was suspended in 2019.

33.    Judgment Creditor has never made any filings since 2019 with the California Secretary of State to establish its existence, or with the County of Riverside. Further, it has made no filing since 2019 to revive its legal capacity; or to show that past entity fees have been paid; or to show that it paid taxes on its $2.15 million in 2006 income.

34.    Judgment Creditor has never had any agent for service of process and has none now.

35.    Because it is not in good standing, Judgment Creditor has no legal capacity to participate as a creditor in Chapter 7 Case 9:21-bk-10174; to bring this Adversary Action in Case 9:23-ap-01023; to use the California courts to enforce the August 2019 Judgment; or to defend itself against this Complaint.

36.    As a result of Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

## E. Factual Allegations Demonstrating That The Chora Law Firm Refused To Forward Settlement Offers To Its Supposed Client.

37.    After two sets of Debtor's exams of Debtor Stein and his wife Hong Sun, and discovery of the Prenuptial Agreement showing there was no community property in their marriage, Defendants Manasserian, Young and the Chora Firm made a spreadsheet of (i) all of the separate assets of Hong Sun who was not a judgment debtor; and (ii) all of Stein's exempt assets, including the exempt Law Offices of Jonathan Stein ERISA Plan. The spreadsheet then multiplied the total of approximately $6 million by 50%, to reach a minimum settlement figure of $3 million -- even though the Judgment Creditor enjoys no such rights to collect the August 2019 Judgment from Hong Sun's separate property or the Debtor's exempt ERISA Plan.

38.    Thereafter, Defendants informed Stein and Hong Sun in an explicit writing that they would not forward to Judgment Creditor, their client, any settlement offering less than $3 million. In fact, the attorneys failed to forward two different settlement offers in six-figure amounts to their supposed client – and so stated in writing. Hong Sun made a complaint to the California State Bar.

39.    As a result of Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

## F. Factual Allegations Demonstrating That Defendants Attempted To Sell Professional Law Corporation's Stock Unlawfully To A Non-lawyer.

40.     Law Offices of Jonathan Stein, PC, is a professional law corporation.  A professional corporation may render its professional services only through individuals who are *licensed* in the particular profession involved.  *Corporations Code §13405(a).*  Because Law Offices of Jonathan Stein, PC is a professional corporation dedicated to the practice of law, the shares of Law Offices of Jonathan Stein, PC may be transferred only to or owned only by appropriately licensed persons.  *See, Cal.Corp.Code §13406; State Bar Rule 3.157; Cal. Bus. & Prof. Code §6171(a).*  These public policies are meant to prevent law corporation shares to be transferred to a fraudster, who then would assume the identity of a licensed California lawyer working for "Law Offices of Jonathan Stein, PC," in order to practice law without a license and defraud future legal clients.

41.     Defendants levied upon and attempted to transfer 100% of the law corporation shares to a non-lawyer, the Judgment Creditor, where they might be used for this illicit purpose.

42.     As a result of Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

## *G. Factual Allegations Demonstrating That Defendants' Repeated Efforts To Strip Jonathan and Hong Sun Of His Or Her Chosen Counsel -- Six Lawyer Declarations.*

43.     Defendants Manasserian, Young and the Chora Law Firm have conducted a campaign to strip the Debtor of his counsel.  Six declarations from different attorneys all conclude that Defendants used repeated sanctions threats, sanctions motions, and other disfavored tactics with the goal of stripping the Debtor or Hong Sun of chosen counsel.  The declarations are all from distinguished practitioners.  This Court is already familiar with David Golubchik, name partner of Levene Neale et al.  Eric Berg is a former President of the Santa Barbara Bar Association.  John Rubiner is a former President of the Beverly Hills Bar Association.  Ron Tym is a former partner in the national law firm of Foley Lardner.  And Robert Forouzandeh is the managing partner of Santa Barbara's most prominent business law firm.

44.     As a result, Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

## *H. Factual Allegations Demonstrating That Defendants Made Baseless Accusations of Corruption Against The Polk County Sheriff and Polk County District Attorney, To A Polk County Judge.*

45.    In December 2018, in a public court filing, the Debtor informed the Iowa Federal Court that he had assigned his interest in $880,825 deposited in the Iowa Federal Court registry bank account to assignee Hong Sun, in return for monetary amounts. Almost two years later, in September 2020, Judgment Creditor and its attorneys caused the Polk County Sheriff to levy on the Court registry bank account, as if it was still owned by the Debtor.

46.    On November 6, 2020, the Sheriff's levy and garnishment were released by the Polk County Sheriff, when it was notified of the assignment to Hong Sun and Judgment Creditor failed to post the bond required by Iowa debt collection statutes. To defeat the actions of the Polk County Sheriff, Defendants accused the Polk County Sheriff and the Polk County District Attorney of corruption, stating that their corruption was the only reason for the bond requirement.

47.    The Polk County Court did not believe Judgment Creditor and its attorneys, but the reputations of the Polk County Sheriff, the Polk County District Attorney, and attorney Josh Moon, a partner with a leading business law firm in Waterloo, Iowa and a Major in the Iowa National Guard, were tarnished to the Polk County Court in public court filings. Attorney Moon later disassociated from that case and the Iowa Federal Court case, ashamed of the false accusations.

48.    As a result, Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

## I.    *Factual Allegations Demonstrating That Defendants Repeatedly Levied Upon The ERISA Plan In Contravention To Federal And California Law.*

49.    Law Offices of Jonathan Stein ERISA Plan (the "ERISA Plan") is a separate legal entity from the Debtor, and a retirement trust protected by the anti-alienation provisions of ERISA and the Internal Revenue Code. The Debtor is the trustee for the ERISA Plan; is a beneficiary of the ERISA Plan; and a participant in the ERISA Plan. He is one of three employees covered by the freestanding ERISA Plan, according to its Third Party Administrator.

50.    Levy and garnishment of ERISA-protected plans is prohibited with few exceptions. Guidry v. Sheet Metal Workers Nat'l Pension Fund (1990) 493 US 365, 372, 110 S.Ct. 680, 685; United States v. Novak (9th Cir. 2007) 476 F.3d 1041, 1045. The Supreme Court has vigorously enforced ERISA's prohibition on the assignment or alienation of pension benefits, including any levy or garnishment by a judgment creditor. Patterson v. Shumate, 504 U.S. 753, 112 S.Ct. 2242, 2247, 119

L.Ed.2d 519 (1992). Similarly, the Internal Revenue Service prohibits levies and garnishments on ERISA Plans by judgment creditors. <u>General Motors Corp. v. Buha</u>, 623 F.2d 455, 462-63 (6th Cir. 1980) ("Giving the required effect to [IRS] Reg. §1.401(a)-13, we conclude that pension plan benefits are not subject to garnishment and that the district court properly enjoined the proceedings in the Michigan court.").

51.    Amounts on deposit in the ERISA Plan Fidelity brokerage account are also protected from levy by creditors pursuant to the exemption afforded by CCP §704.115, which states in part "(b) All amounts held, controlled, or in process of distribution by a private retirement plan, for the payment of benefits as an annuity, pension, retirement allowance, disability payment, or death benefit from a private retirement plan are exempt." This exemption does not depend on the retirement income of the Debtor, or the necessity of retirement fund amounts, but rather covers <u>all</u> retirement funds and <u>all</u> retirement fund distributions.

52.    Judgment Creditor and its attorneys unlawfully levied upon the ERISA Plan in 2021. The Los Angeles Sheriff immediately released that levy and a lawsuit under ERISA and the Internal Revenue Code ensued, <u>Arka Profit-Sharing Plan v. Gabrielino-Tongva Tribe</u>, SBSC Case No. 22CV00471. The Debtor was not party to that lawsuit. Despite the obvious violation of law and the lawsuit, Judgment Creditor and its attorneys filed another Sheriff's levy in 2023, which lead directly to this Chapter 7 filing by Debtor.

53.    As a result, Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

### J. Factual Allegations Demonstrating That Defendants Made Repeated Criminal Threats In Civil Litigations.

54.    Defendants Judgment Creditor and its attorneys made repeated criminal threats in debt collection proceedings in 2022 in Trial Court Case BC361307, in violation of California law and California Rules Of Professional Conduct. The criminal threats were made to gain an advantage in the civil debt collection proceedings and to land a $3 million settlement.

55.    These 2022 criminal action threats were actually the <u>second</u> effort by Judgment Creditor to start criminal proceedings against Stein. The first criminal investigation instigated by Judgment Creditor was a false accusation by Judgment Creditor's last counsel, Ms. Delia Ibarra, alleging that

Stein made a death threat against her in the courtroom. The false accusation lead to a full investigation by the Los Angeles District Attorney and the Los Angeles County Sheriff, which was brief and ended with no charges being filed. Mr. Stein then filed a tort lawsuit against Ms. Ibarra and her law firm. Ms. Ibarra was apparently forced out of her partnership in Lara Ibarra & Davis LLP, or resigned her partnership, and a confidential settlement with Stein by the law firm's insurance carrier ended his lawsuit.

56.    In court papers filed in the debt collection proceedings in Trial Court Case BC361307, Judgment Creditor and its attorneys made repeated threats to instigate criminal proceedings against Stein, if he did not agree to civil litigation pleadings in favor of Judgment Creditor. For example, Defendants stated, "we now believe Mr. Stein manufactured and submitted false evidence to the court on additional occasions to support various pleadings and appellate submissions. California Penal Code §132 states that a person submitting false evidence to a court, "knowing the same to have been forged or fraudulently altered or ante-dated, is guilty of a felony." Besides these criminal threats, Judgment Creditor and its attorneys filed a contempt proceeding against Stein and explicitly requested he be sentenced to 26 days in jail (see below).

57.    As a result, Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

### K. Factual Allegations Demonstrating That Defendants Refused To Follow Two Cardiologist Warning Letters And Caused Stein To Be Hospitalized.

58.    In Trial Court Case BC361307, in debt collection proceedings in 2022, Stein presented not one, but two letters from his cardiologist, Dr. Goyal. The two letters were medical status updates citing heart issues suffered by Stein since 2016. Now, six years later, Dr. Goyal's letters reflected his own heart tests and attached past letters from other heart specialists written since 2016. Dr. Goyal's letters sought to limit Plaintiff Stein's time spent in debtor's exams, and the frequency of debtor's exams, so as to avoid another heart incident. Stein had already suffered three heart incidents involving Judgment Creditor.

59.    Judgment Creditor ignored the explicit warnings from Dr. Goyal and took long, repetitious debtor's exams day after day, until Stein suffered a heart incident at one of them.

60.     In a flurry of activity, Judgment Creditor and its attorneys attempted to overwhelm Stein with work, having previously succeeded in stripping him of counsel (and so requiring Stein to do his own legal work in greater volumes). Stein was already fully employed as a federal litigator. Stein worked approximately 100 hours per week for 9 consecutive weeks, from May 1 until July 1, 2022. That is 900 hours of legal work in a 9-week period.

61.     On June 23, 2022, Stein began experiencing chest pains. On June 23, 2022, Stein handled oral argument on Judgment Creditor motions, and then had a 3-hour debtor's exam. Stein complained constantly of chest pains, but nonetheless finished the 3-hour exam. Stein continued experiencing chest pains. On July 5, Stein saw his Santa Barbara cardiologist Dr. Vishal Goyal again. Dr. Goyal conducted an examination of Stein, prescribed a medicine for angina, and gave Stein strict medical requirements for continuing the participation in this case, to avoid permanent damage to his heart beyond the permanent damage already suffered in 2016.

62.     At the August 3, 2022 debtor's exam, Stein had to stop four times due to chest pains and eventually suffered a heart incident. Attorney Armen Manasserian refused repeatedly to stop the debtor's exam. Near its conclusion, Stein could not continue, called 911, and was taken in ambulance to Cottage Heart And Vascular Hospital. The emergency responders administered nitroglycerin and other medications prescribed for a heart attack.

63.     Thereafter, Judgment Creditor and its attorneys opposed Stein's ex parte application to stop the debtors' exam and continued taking long debtor's exams on every court day. The debtor's exam ended up running eight days' long. The majority of time was spent reviewing documents in a different case, the Iowa Federal Court Case, having nothing to do with Trial Court Case BC361307. These documents were fully explained in Iowa proceedings already, but were used by Mr. Manasserian as an excuse in his effort to cause Stein to have another heart incident.

64.     As a result, Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

### L. Factual Allegations Demonstrating That Defendants Young's and Manasserian's Physical Assault on Stein

65.     By 2023, Judgment Creditor and its attorneys had moved from (i) accusing Stein of criminal conduct to gain advantage in civil proceedings, in violation of California law and California

Rules of Professional Conduct; to (ii) attempting to cause Stein to suffer another heart incident, which attempt was successful and was followed by further attempts; to (iii) making a physical assault on Stein outside of the Spring Street courthouse.

66.    At the conclusion of the March 7, 2023 debtor's exam, Stein spoke with Mr. Paul Young attempting to reach an understanding on a disputed procedural point concerning Mr. Young's very strong desire to name Stein's father-in-law, 80-year-old Xinan Gu who speaks no English, as a named defendant in the SBSC UVTA Action. Stein attempted to agree with Mr. Young on as many points as possible, to avoid Mr. Young naming father-in-law Gu as a new defendant. The discussion started inside the Spring Street courthouse and continued while Messrs. Stein, Young and Manasserian walked outside of the courthouse. While Stein calmly spoke, attorney Young snapped and yelled, "Fuck you," lunging at Stein with his full 300-pound body weight. **Attorney Young threw a punch as Stein turned and retreated, hitting Stein in the back of his head**. Attorney Manasserian joined the fray, lunging into Stein to create a "two-on-one", but then thought better of the physical assault. Mr. Manasserian turned away from Stein and restrained attorney Young from landing a second punch. No apology or explanation was offered to Stein after the incident or at any later date.

67.    As a result, Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

## M. Factual Allegations Demonstrating That Defendants' Failed Contempt Trial Was Malicious.

68.    On November 7 and 8, 2022, the Trial Court Case BC361307 held a bench trial on criminal contempt charges leveled by Judgment Creditor and its attorneys. Judgment Creditor and its attorney requested that Stein spend 26 days in jail, opting for criminal contempt over the easier-to-prove civil contempt.

69.    At the trial, Defendants Young and Manasserian testified as witnesses, besides authoring all of the pleadings, and presenting all of the trial evidence. Judgment Creditor and its attorneys presented testimony from five witnesses in an attempt to meet its burden to prove beyond a reasonable doubt five counts of contempt alleged by Defendants under penalty of perjury.

70.    After trial on the merits was completed, the Trial Court invited closing arguments and closing briefs. It's decision on the merits was contained in its June 1, 2023 court order, which stated in

part, "After consideration of all of the evidence and arguments at the indirect contempt trial, the Court withdraws the OSC re: Contempt."

71.    Stein spent $70,000 on a criminal attorney to represent him, as well as over $100,000 of his billable time to reduce costs to that level only. As a result of Defendants' conduct, Plaintiff suffered other damages, losses, costs and injury.

## N. Factual Allegations Demonstrating That Defendants' Failed Polk County Action Was Malicious.

72.    As stated above, Judgment Creditor and its attorneys caused the Polk County Sheriff to levy on the $880,825 amount in the Iowa Federal Court registry bank account in fall 2020. They did so even though Stein no longer owned the money and had disclosed his assignment in Court papers in December 2018, almost two years earlier.

73.    In support of their action, Judgment Creditor and its attorneys made repeated misrepresentations to the Polk County Court and failed to name the Polk County Sheriff as a defendant. They named the Debtor as a defendant instead.

74.    On November 6, 2020, the Sheriff's levy and garnishment were released by the Polk County Sheriff. Thereafter, the Polk County Court involuntarily dismissed the court action and the Judgment Creditor failed to challenge the involuntary dismissal.

75.    As a result of Defendants' conduct, Plaintiff suffered other damages, losses, costs and injury.

## O. Factual Allegations Demonstrating That Defendants' Failed LASC Action Against The Debtor Concerning The Santa Monica Property Was Malicious.

76.    Debtor Stein was never on title on 2215 Ashland Avenue, a Santa Monica home purchased by Hong Sun as her sole and separate property. Stein lived there but did not pay rent to his wife. Despite the absence of any evidence whatsoever, Judgment Creditor and its attorneys falsely alleged that Stein was the owner of 2215 Ashland and that a fraudulent conveyance was made to his wife in Los Angeles Superior Court Case No. 21STCV00837, filed on January 8, 2021 (the "LASC Ashland Action").

77.     Judgment Creditor and its attorneys lost the demurrer and the LASC Ashland Action was dismissed involuntarily. The dismissal was never appealed and is now final.

78.     As a result of Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

**P. *Factual Allegations Demonstrating That Defendants Ran Up An Enormous $1 Million Litigation Bill With Seven Lawsuits Against The Debtor, Who Was Cooperating With Legitimate Debt Collection Measures.***

79.     The Debtor cooperated with legitimate debt collection activities, volunteering his employer's name and paying over $46,000 toward debt collection on the August 2019 Judgment -- even before it was final. Judgment Creditor and its attorneys have never acknowledged in any court filing receipt of this $46,000-plus amount and have made no court record of its receipt.

80.     Defendant Manasserian termed this amount "chump change" and insisted instead on collecting at least $3 million. As stated above, Defendants Manasserian, Young and the Chora Firm made a spreadsheet of (i) all of the separate assets of Hong Sun who was not a judgment debtor; and (ii) all of Stein's exempt assets, including the exempt ERISA Plan of Law Offices of Jonathan Stein. The spreadsheet then multiplied the total of approximately $6 million by 50% to come up with a minimum settlement figure of $3 million.

81.     Judgment Creditor and its attorneys are motivated by malice, not the pursuit of legitimate debt collection activities. In pursuit of this $3 million amount, Judgment Creditor and its attorney have acted with malice to force Stein and Hong Sun to run up a bill for outside law firms and Stein's own time of over $1 million in less than three years, in the following seven debt collection litigations:

- *Gabrielino-Tongva Tribe v. Stein*, LASC Case BC361307.

- *Gabrielino-Tongva Tribe v Stein et al*, LASC Case No. 20STCV00837

- *Gabrielino-Tongva Tribe v Stein*, Santa Barbara Superior Court Case 20CV01716.

- *Gabrielino-Tongva Tribe v. Stein et al*, SBSC Case 21CV00198

- *Gabrielino-Tongva Tribe v. Stein*, SBSC Case 22CV03290.

- *Gabrielino-Tongva Tribe v. Stein*, Iowa District Court for Polk County Case No. 05771-CVCV-060511.

- *Gabrielino-Tongva Tribe v. Stein*, USDC Southern District of Iowa Case No. 4:18-cv-0331.

82.    As a result, Defendants' conduct, Plaintiff suffered damages, losses, costs and injury.

## COA #1 – FEDERAL DECLARATORY RELIEF ACT, 28 USC §2201 ET SEQ (NO LEGAL CAPACITY)

### (Against Defendant Judgment Creditor)

83.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

84.    A dispute has arisen, and an actual controversy now exists among Defendant Judgment Creditor and Plaintiff with respect to the current legal capacity of the Judgment Creditor.

85.    Defendant Judgment Creditor is not in good standing and has not been in good standing since 2019.  Judgment Creditor has no current legal capacity to maintain any of the actions in this Court, including Case Nos. 9:23-10174 and 9:23-ap-01023, against Plaintiff (the Debtor).

86.    Judgment Creditor has no current legal capacity to maintain this Adversary Action and its Proof of Claim is a nullity.

87.    Judgment Creditor has no current legal capacity to maintain any of the actions in any California state court against Plaintiff (the Debtor).

88.    Judgment Creditor has no current legal capacity to maintain any of the actions in the Iowa Federal Court against Plaintiff (the Debtor).

89.    Pursuant to the Federal Declaratory Relief Act, *28 USC §2201 et seq*, Plaintiff desires (i) a judicial determination of the legal capacity to prosecute or defend such court actions; (ii) a judicial determination of the respective rights, duties, and obligations of Plaintiff and Defendant Judgment Creditor; and (iii) one or more declarations on such topics.

90.    Such judicial determinations and declarations are necessary and appropriate at this time in order that Plaintiff and Defendant Judgment Creditor may ascertain their rights and duties in respect to the August 2019 Judgment, Judgment Creditor's Proof of Claim, and the various court actions between the parties.

91.     This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #2 – VIOLATION OF AUTOMATIC STAY (ONGOING) PURSUANT TO 11 USC §362(K).

### (Against All Defendants)

92.     The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

93.     Defendants have violated the automatic stay in Case No. 9:23-bk-10174 one or more times. Defendant's actions were willful and may be remedied pursuant to 11 USC §362(k) and other statutes.

94.     Defendants conduct proximately caused Plaintiff to suffer damages, losses, costs and injury, including attorney's fees, expert fees, accountants' fees, neutrals fees and other costs in resolving court proceedings that are void.

95.     Actual damages to Plaintiff continue to accrue.  Plaintiff is also entitled to punitive damages. While some damages will be addressed by a motion to this Court, other damages will continue to accrue after the motion is heard.

96.     This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #3 – VIOLATION OF ANTI-ALIENATION PROVISIONS OF ERISA ACT AND ERISA PLAN.

### (Against All Defendants)

97.     The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

98.    Plaintiff is the trustee for the ERISA Plan; is a beneficiary of the ERISA Plan; and a participant in the ERISA Plan.  Amounts on deposit in the ERISA Plan Fidelity brokerage account are protected from levy.

99.    Defendants repeatedly caused the Los Angeles County Sheriff to levy upon the ERISA Plan Fidelity brokerage account, in violation of federal and California law.  In particular, there were violations of the ERISA Act, the Internal Revenue Code, and Cal.Civ.Code §708.115. Defendants acted willfully and with knowledge that they were levying upon the assets of an ERISA Plan.

100.    Pursuant to 29 USC §1132(a)(3), Plaintiff seeks to (i) redress violations of anti-alienation provisions of ERISA, the Internal Revenue Code and the ERISA Plan; (ii) enforce the anti-alienation provisions of ERISA, the Internal Revenue Code and the ERISA Plan against Defendants; (iii) enjoin future acts in violation of ERISA, the Internal Revenue Code and the ERISA Plan provisions; and (iv) obtain other equitable and injunctive relief.

101.    Defendant's conduct proximately caused Plaintiff to suffer damages, losses, costs and injury, including the loss of use of their property, significant attorney's fees, and the need to cover ERISA Plan expenses from the Debtor's own funds.

102.    Defendants' misconduct also has caused, and is continuing to cause, irreparable injury to Plaintiffs for which there is no adequate remedy at law.

103.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #4 -- EQUITABLE ACTION TO DISSOLVE PRELIMINARY INJUNCTION ON ERISA PLAN ASSETS.

### (Against Defendant Judgment Creditor)

104.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

105.    Defendant used material misstatements of fact and law to gain, on an ex parte basis, a preliminary injunction against withdrawing assets from the ERISA Plan.

106.    Pursuant to 29 USC §1132(a)(3), Plaintiff seeks to (i) redress violations of anti-alienation provisions of ERISA, the Internal Revenue Code and the ERISA Plan; (ii) enforce the anti-alienation provisions of ERISA, the Internal Revenue Code and the ERISA Plan against Defendants; (iii) enjoin future acts in violation of ERISA, the Internal Revenue Code and the ERISA Plan provisions; and (iv) obtain other equitable and injunctive relief.

107.    The ERISA Plan is exempt under federal and California law and there is no lawful reason that the preliminary injunction should continue to be enforced by this Court. Pursuant to federal bankruptcy law, this Court enjoys the authority to modify or dissolve the existing preliminary injunction on the ERISA Plan.

108.    Plaintiff will give an accounting to this Court of attorneys fees and court costs paid on behalf of the ERISA Plan and will seek its order allowing Plaintiff Debtor to withdraw these amounts and future amount of like kind.

109.    Plaintiff will give an accounting to this Court of quarterly withdrawals of retirement payments as a beneficiary and participant of the ERISA Plan and will seek its order allowing Plaintiff to withdraw these amounts and future amount of like kind.

110.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #5 – ASSAULT

### (Against Defendants Manasserian, Young and the Chora Law Firm)

111.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

112.    Defendants Young and Manasserian physically attacked Plaintiff Stein outside of the Spring Street Courthouse in 2023, resulting in harmful or offensive contact. Plaintiff did not consent to any such contact.

113.    Defendants intended to either inflict harmful or offensive contact, or cause plaintiff to fear more such contact, or both.

114.    Defendants' actions put Plaintiff in apprehension of an immediate harmful or offensive contact, and more such contact.

115.    Defendants' conduct proximately caused Plaintiff to suffer physical harm and emotional distress as well as other damages, losses, costs and injury.

116.    Each Defendant knew of the probable injurious consequences of his or its conduct and deliberately failed to avoid them. Each Defendant intentionally performed one or more acts which he knew, or should have known, were highly likely to result in harm to Plaintiff. Each defendant is guilty of oppression, fraud, or malice as those terms are used in *Cal.Civ.Code §3294*, justifying punitive damages in an amount to be proven at trial.

117.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #6 -- INTENTIONAL INFLICTION OF PHYSICAL HARM AND EMOTIONAL DISTRESS.

### (Against Defendants Manasserian, Young, Chora Law Firm and Goad)

118.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

119.    Defendants' conduct was outrageous and beyond the bounds of decency tolerated by society. Judged objectively, a reasonable community member, hearing what each Defendant did, would feel resentment and exclaim "outrageous!"

120.    Defendants' conduct was directed at Plaintiff and intended to cause physical harm and emotional distress. Alternatively, Defendants acted with reckless disregard for the probability that Plaintiff would suffer physical harm or emotional distress.

121.    Defendants' conduct proximately caused Plaintiff to suffer physical harm and emotional distress, as well as other damages, losses, costs and injury.

122.    Each Defendant knew of the probable injurious consequences of his or its conduct and deliberately failed to avoid them. Each Defendant intentionally performed one or more acts which he

knew, or should have known, were highly likely to result in harm to Plaintiff. Each defendant is guilty of oppression, fraud, or malice as those terms are used in *Cal.Civ.Code §3294*, justifying punitive damages in an amount to be proven at trial.

123.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## <u>COA #7 – WILLFUL MISCONDUCT</u>

### (Against Defendants Manasserian, Young, Chora Law Firm and Goad)

124.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

125.    Defendants and each of them knew that Plaintiff was aged, and because of his heart condition, frail and in need of careful attention to his medical needs to prevent illness and injury.

126.    Defendants held a standard duty of care towards Plaintiff, or an elevated duty of care when Plaintiff was within the custodial care of Defendants during debtors exams and depositions.

127.    Defendants and each of them knew or should have known that in breaching their duty to Plaintiff, their conduct posed the high probability that Plaintiff would sustain serious physical or emotional injury or die.

128.    Notwithstanding such knowledge, and for the sake of monetary gain, Defendants consciously and knowingly disregarded the peril, based on the motive of profiting from their misconduct.

129.    Defendants conduct proximately caused Plaintiff to suffer physical and emotional harm, as well as other damages, losses, costs and injury.

130.    The conduct of the Defendants, and each of them was intentional and subjected Plaintiff to cruel and unjust hardship and was in conscious disregard of the probability of injury to Plaintiff. Accordingly, Defendants and each of them have acted with recklessness, malice and oppression and an award of general damages for Plaintiff's pain and suffering under the provisions of *Welf. & Inst. Code § 15657.*

131.    Each Defendant knew of the probable injurious consequences of his or its conduct and deliberately failed to avoid them. Each Defendant intentionally performed one or more acts which he knew, or should have known, were highly likely to result in harm to Plaintiff. Each defendant is guilty of oppression, fraud, or malice as those terms are used in *Cal.Civ.Code §3294*, justifying punitive damages in an amount to be proven at trial.

132.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #8 – ELDER ABUSE ACT VIOLATIONS, WELF. & INST. CODE, §15610.30)

**(Against Defendants Manasserian, Young, Chora Law Firm and Goad)**

133.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

134.    Defendants took or appropriated Plaintiff's property, or intimidated and caused actionable physical or emotional harm to Plaintiff, in one or more ways, including but not limited to:

    a.  blocking retirement distributions that were due and payable.

    b.  forcing Plaintiff to cover ERISA Plan expenses himself because of his fiduciary duties.

    c.  forcing Plaintiff to incur approximately $70,000 in legal fees.

    d.  Causing Plaintiff to suffer a heart incident while in their custody or control during eight days' of debtor's exams.

    e.  Physically assaulting Plaintiff outside the Spring Street Courthouse.

    f.  Causing deep-set emotional harm.

135.    Plaintiff was 65 years of age or older at the time of Defendants' conduct.

136.    Each Defendant knew or should have known that its conduct would take or appropriate Plaintiff's property, intimidate or otherwise harm Plaintiff.

137.    Each Defendant acted with recklessness.

138.    Defendants and each of them engaged in "physical abuse" as defined at *Welf. & Inst. Code § 15610.63.*

139.    Defendants and each of them have committed "neglect" as defined at *Welf. & Inst. Code § 15610.57.*

140.    Defendants conduct proximately caused Plaintiff to suffer damages, losses, costs and injury.

141.    The conduct of the Defendants, and each of them was intentional and subjected Plaintiff to cruel and unjust hardship and was in conscious disregard of the probability of injury to Plaintiff. Accordingly, Defendants and each of them have acted with recklessness, malice and oppression and an award of general damages for Plaintiff's pain and suffering under the provisions of *Welf. & Inst. Code § 15657.*

142.    Each Defendant knew of the probable injurious consequences of his or its conduct and deliberately failed to avoid them.  Each Defendant intentionally performed one or more acts which he knew, or should have known, were highly likely to result in harm to Plaintiff. Each defendant is guilty of oppression, fraud, or malice as those terms are used in *Cal.Civ.Code §3294*, justifying punitive damages in an amount to be proven at trial.

143.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #9 – MALICIOUS PROSECUTION.

### (Against Defendants Manasserian, Young, Chora Law Firm and Goad)

144.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

145.    Defendants were actively involved in commencing or continuing one or more legal actions, proceedings or causes of action against Plaintiff and which ended in Plaintiff's favor.

146.    No reasonable person in Defendants' circumstances would have believed that there were reasonable factual and legal grounds to commence or continue any such lawsuit against Plaintiff.

147.    Defendants acted primarily for a purpose other than succeeding on the merits of their claim.

148.    Alternatively, Defendants were "actively involved" in causing Plaintiff to be prosecuted in a criminal contempt case, after learning that there was no probable cause that Plaintiff had committed a crime. Alternatively, Defendants sought out the police or prosecutorial authorities and falsely reported facts to them indicating that Plaintiff had committed a crime.

149.    Defendants conduct proximately caused Plaintiff to suffer damages, losses, costs and injury, including reputational damages, loss of income, attorney's fees, expert fees, accountants' fees, neutrals fees and other costs.

150.    Each Defendant knew of the probable injurious consequences of his or its conduct and deliberately failed to avoid them.  Each Defendant intentionally performed one or more acts which he knew, or should have known, were highly likely to result in harm to Plaintiff. Each defendant is guilty of oppression, fraud, or malice as those terms are used in *Cal.Civ.Code §3294*, justifying punitive damages in an amount to be proven at trial.

151.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## <u>COA #10 – ABUSE OF PROCESS.</u>

### (Against Defendants Manasserian, Young, Chora Law Firm and Goad)

152.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

153.    Defendants intentionally used one or more legal procedures, including sheriffs levies in Iowa and California, for an improper purpose that the procedure was not designed to achieve, and to perpetrate an injustice.

154.    Defendants conduct proximately caused Plaintiff to suffer damages, losses, costs and injury, including reputational damages, loss of income, attorney's fees, expert fees, accountants' fees, neutrals fees and other costs.

155.    Each Defendant knew of the probable injurious consequences of his or its conduct and deliberately failed to avoid them. Each Defendant intentionally performed one or more acts which he knew, or should have known, were highly likely to result in harm to Plaintiff. Each defendant is guilty of oppression, fraud, or malice as those terms are used in *Cal.Civ.Code §3294*, justifying punitive damages in an amount to be proven at trial.

156.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #11 - INTENTIONAL INTERFERENCE WITH CONTRACT

### (Against Defendants Manasserian, Young, Chora Law Firm and Goad)

157.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

158.    There was a valid contract between Plaintiff and each of his attorneys. Each of the Defendants knew of each such contract, but was not party to each such contract.

159.    Defendant's conduct prevented performance, or made performance more expensive or difficult, for one or more attorney contracts.

160.    Each Defendant intended to disrupt the performance of each such attorney contract, or knew that disruption of performance was certain or substantially certain to occur.

161.    With respect to only those attorney contracts that were terminable at will by the attorney: each Defendant acted wrongfully independent of his or its intent to interference with such attorney contract.

162.    Defendant's conduct caused a breach of such attorney contract, or its termination; or alternatively, Defendant's conduct disrupted the attorney-client relationship and caused Plaintiff to incur more attorneys fees under such attorney contract.

163.    Defendants conduct proximately caused Plaintiff to suffer damages, losses, costs and injury, including reputational damages, loss of income, attorney's fees, expert fees, accountants' fees, neutrals fees and other costs.

164.    Each Defendant knew of the probable injurious consequences of his or its conduct and deliberately failed to avoid them.  Each Defendant intentionally performed one or more acts which he knew, or should have known, were highly likely to result in harm to Plaintiff. Each defendant is guilty of oppression, fraud, or malice as those terms are used in *Cal.Civ.Code §3294*, justifying punitive damages in an amount to be proven at trial.

165.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

## COA #12 – NEGLIGENCE PER SE:  VIOLATION OF B&P CODE §6129 (CHAMPERTY, MAINTENANCE, AND BARRATRY).

### (Against Defendants Manasserian, Young, Chora Law Firm and Goad)

166.    The allegations in paragraphs 1 through 82 above are repeated hereby as if set forth at length herein.

167.    Defendants' conduct violated *Cal.B&PCode §6129* ("Every attorney who, either directly or indirectly, buys or is interested in buying any evidence of debt or thing in action, with intent to bring suit thereon, is guilty of a misdemeanor.") Section 6129 established each Defendant's duty of care as well as the standard of care to be followed by Defendant.

168.    Plaintiff's harm is the type of harm that Section 6129 was designed to prevent, and Plaintiff was among those whom the statute was designed to protect. Accordingly, each Defendant was negligent as a matter of law.

169.    Defendants conduct that violated Section 6129 also proximately caused Plaintiff to suffer damages, losses, costs and injury, including reputational damages, loss of income, attorney's fees, expert fees, accountants' fees, neutrals fees and other costs.

170.    Each Defendant knew of the probable injurious consequences of his or its conduct and deliberately failed to avoid them.  Each Defendant intentionally performed one or more acts which he knew, or should have known, were highly likely to result in harm to Plaintiff. Each defendant is guilty

of oppression, fraud, or malice as those terms are used in *Cal.Civ.Code §3294*, justifying punitive damages in an amount to be proven at trial.

171.    This cause of action is owned by the Debtor and not the Trustee in Case 9:23-bk-10174. This cause of action does not apply to any of Defendants' actions that were privileged under the litigation privilege (or any other privilege).

# <u>PRAYER TO THIS COURT.</u>

**WHEREFORE**, Complainant Stein prays for judgment against Defendants as follows:

A. For tort damages, in amounts according to proof.

B. For general damages, for physical injury and pain and suffering.

C. For special damages, for consequential damages, physical injury and pain and suffering.

D. For punitive damages.

E. For all remedies available to be awarded under the provisions of the Elder Care Act.

F. For the Court's declaration, either affirmative or negative in form and effect, that (i) Plaintiff and Defendant Judgment Creditor is not in good standing and has not been in good standing since 2019; (ii) Defendant may not maintain this Adversary Action and its Proof of Claim is a nullity; (iii) Defendant may not maintain any other actions in California or Iowa courts; and (iv) such further declarations, either affirmative or negative in form and effect, as the Court may determine.

G. For attorney's fees, expert fees, accountants' fees, neutrals fees and other costs, in accordance with statue or law.

H. And, for such other and further relief as the Court deems just and reasonable.

Defendant and Plaintiff Stein hereby makes demand for jury trial on all causes of action by or against Stein.

DATED:  August 14, 2023

LAW OFFICES OF DAVID B. LALLY
By:    */s/ David Lally*
David B. Lally
Attorneys for Plaintiff, Chapter 7 Debtor
Jonathan Stein

B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**

JONATHAN ALAN STEIN

**DEFENDANTS** ARMEN MANASSERIAN, PAUL YOUNG, CHERA YOUNG + MANASSERIAN LLP, SANTA ROSA GOLD, GABRIELINO-TONGVA TRIBE + DESI-10

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

David R. Zaro, P.O. Box 355, WILMINGTON, NY, 12997  949-500-7400

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
- ☑ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor
- ☐ Other
- ☐ Trustee

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☑ Creditor
- ☐ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

DECLARATORY RELIEF, STAY VIOLATIONS VIOLATION OF ANTI-ALIENATION CLAUSES OF ERISA ACT, DISSOLVE PRELIMINARY INJUNCTION OVER ERISA PLAN ASSETS ASSAULT INTENTIONAL INFLICTION OF PHYSICAL HARM + EMOTIONAL DISTRESS, WILLFUL MISCONDUCT, ELDER ABUSE ACT VIOLATIONS, MALICIOUS PROSECUTION, ABUSE OF PROCESS INTENTIONAL INTERFERENCE

**NATURE OF SUIT** W/CONTRACT, NEGLIGENCE

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☑ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ UNKNOWN |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>*Jonathan Alan Stein* | BANKRUPTCY CASE NO.<br>*9-23-bk-10174-RC* | |
| DISTRICT IN WHICH CASE IS PENDING<br>*Cent. Dist. of Ca.* | DIVISION OFFICE<br>*Northern* | NAME OF JUDGE<br>*Clifford* |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>*Gabrieleno-Tongva Tribe* | DEFENDANT<br>*Jonathan Alan Stein* | ADVERSARY PROCEEDING NO.<br>*9-23-ap-01023 RC* |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>*Cent. Dist. of Ca.* | DIVISION OFFICE<br>*Northern* | NAME OF JUDGE<br>*Clifford* |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*David B. Lally* | | |
| DATE<br>*8/14/2023* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>*David B. Lally, Esq.* | |

## INSTRUCTIONS

        The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

        A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

        The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.